SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**OCT -7 2014**

ARTHUR JOHNSTON
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | | |
|---|---|---|
| BIOMED, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:14cv779  HTW-LRA |
| | ) | |
| CHRISTOPHER ALLEN | ) | |
| and MICHAEL MURPHY | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff BioMed, LLC ("BioMed " of "Plaintiff"), pursuant to Rule 15 and 65 of the Federal Rules of Civil Procedure, by and through counsel, hereby files its Complaint for Injunctive Relief and Other Damages and states as follows:

### NATURE OF CASE

1.      BioMed brings this action for preliminary injunctive relief, permanent injunctive relief, and damages, as well as for all other available legal and equitable relief, arising out of Defendants Michael Murphy and Christopher Allen's violations of the provisions of their Sales Representative Trade Secret and Proprietary Information Agreement (hereinafter referred to as "Agreement"), which contains provisions   including Confidentiality, Non-Solicitation of Employees, Customers, and Restriction on Competitive Employment. BioMed brings suit for purposes of preventing irreparable harm caused by Defendants, including the unauthorized competition against BioMed, solicitation of BioMed's clients, and the disclosure of BioMed's confidential, proprietary, business and/or trade secret information to BioMed's competitors,

among other damages, related to Defendants' violation of those agreements. The Agreement signed by Defendants selects Tennessee as the choice of law for any dispute.

## PARTIES

2.      At all times material hereto, Plaintiff BioMed LLC, was and is, a Tennessee limited liability company, with its principal offices at 7751 Wolf River Blvd., Germantown, Tennessee 38138. The members of BioMed LLC are all Tennessee residents.

3.      Upon information and belief, Defendant Christopher Allen ("Allen") is an adult resident of the State of Mississippi, who can be served with process at 2027 Brecon Drive, Jackson, Mississippi 39211.

4.      Upon information and belief, Defendant Michael Murphy ("Murphy") is an adult resident of the State of Mississippi, who can be served with process at 400 Chartrese Drive, Brandon, Mississippi 39047.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, based on diversity of citizenship between Plaintiff and Defendants. The amount in controversy exceeds $75,000.

6.      Venue is proper in that Defendants worked for Plaintiff, conducted business for Plaintiff, in the Jackson, Hinds County, Mississippi area, and the acts that constitute Plaintiff's causes of action against Defendant took place in Jackson, Mississippi, which is included in this judicial district.

## FACTUAL BACKGROUND

7.      Plaintiff BiodMed is, and all at times material hereto, has been engaged in the business of selling medical devices to include spinal implants and other medical equipment.

8.      Defendants Allen and Murphy are former sales representatives whose duties included selling specialty medical equipment, including spinal implants, devices, and other medical equipment to a client base in and around the Jackson, Mississippi market area.

9.      On March 13, 2006, Defendant Allen was hired as a sales representative for HR and Associates, that later became BioMed, LLC.  At the time of hire, Defendant Allen signed an agreement containing provisions prohibiting non-solicitation and restrictions on competitive employment. A copy of the previous agreement is attached hereto as Exhibit A.

10.     Michael Murphy was hired by HR and Associates on June 1, 2004 working in Memphis, Tennessee. HR Associates later became BioMed, LLC. At the time of hire, Defendant Murphy signed an agreement containing provisions prohibiting non-solicitation and restrictions on competitive employment. A copy of the previous agreement is attached hereto as Exhibit B.

11.     In 2010, BioMed assigned Defendant Murphy to the Jackson area market and he subsequently moved to Jackson, Mississippi.

12      In January 2014, both Defendants resigned their employment with BioMed. After discussions with BioMed, Defendants rescinded their resignation almost immediately and were reemployed with an upward adjustment in their commissions.

13.     In January 2014, after Defendants rescinded their resignation, each signed and accepted a new agreement, the Sales Representative Trade Secret and Proprietary Information Agreement  ("Agreement"), which contains among other provisions, provision regarding

3

Confidentiality, Non-Solicitation of Employees, Customers, and Restriction on Competitive Employment. A true and correct copy of the Agreements signed by Defendants is attached as collective Exhibit C.

14.     Defendants Murphy and Allen were Sales Representatives for BioMed working in the Jackson, Mississippi area. In this capacity, Defendants represented BioMed's interests in all aspects, including customer contact, marketing strategies, marketing tactics, responding to the needs of customers, developing and providing customer data and pricing of products for sale to customers, and planning and implementing strategies to grow BioMed's business into broader geographic locations. Defendants also participated as a part of BioMed's sales team to formulate BioMed's business strategy plans. Defendants received training and experience from their employment with BioMed, and having as a result of this employment with BioMed, developed extensive knowledge of the manufacture, design, devices, and services offered by BioMed.

15.     While in BioMed's employ, Defendants were exposed to and participated in the use of trade secrets, confidential processes and procedures, confidential and development of processes of Plaintiff, as well as other privileged information, such as customer data, marketing and strategic sales information, pricing and company goals, and projections of long-term strategy plan.

16.     In the Agreements, Defendants agreed to provisions requiring each not to compete against BioMed or solicit BioMed's customers or prospective customers for a period of one year after his employment ended, and not to use, for himself or others, and not to disclose or use, Plaintiff BioMed's confidential and proprietary information, trade secrets, and the like after their employment ended.

17.     During the time period that Defendants were employed by BioMed, Defendants were exposed to, trained in, and became fully acquainted with Plaintiff's unique methods in conducting its business, its financial information, its pricing information, and the like, and became personally acquainted with Plaintiff's customers, marketing plans and strategies, pricing of products, confidential information, trade secrets, and confidential information, including its design, and processes relating to the medical device industry.

18.     During the time Defendants were employed by BioMed, and due to the employment by Plaintiff, Defendants became personally acquainted with numerous customers and potential customers of Plaintiff, specifically in Jackson, Mississippi market area as specifically defined in the Agreement. See collective Exhibit C.

19.     During the time that Defendants were employed by BioMed, and due to the employment by Plaintiff, Defendants further became acquainted with the needs and requirements of Plaintiff's customers and protected information.

20.     During the time that Defendants were employed by BioMed, and due to employment by Plaintiff, Defendants further became acquainted with Plaintiff's confidential and proprietary information and trade secrets, including, but not limited to, its methodology, business practices, unique methods and procedures, customer lists, customer profiles, potential new customer lists, customer credit data, price lists, customer service programs, marketing, promotional activities and techniques, pricing methods, company goals, strategy plans, and similar proprietary and confidential information.

21.     Defendants resigned their employment with BioMed on September 5, 2014.

22.     Defendants formally began employment within days after leaving BioMed, as sales representatives with Globus Medical, a direct competitive business of the Plaintiff.

23.     Upon information and belief, Defendants have violated the Restriction on Competitive Employment provision of their Agreement by working for a competitive business, Globus Medical.

24.     Defendants have violated the Non-Solicitation of Employees, Customers provisions of their respective Agreements by soliciting business from BioMed's clients.

25.     Upon information and belief, Defendants have violated the Confidentiality provisions in their respective Agreements, by use and disclosure of confidential information. Defendants will continue to use and disclose to third parties Plaintiff's confidential and proprietary information, trade secrets, and the like all in breach of their Agreement with Plaintiff.

26.     Upon information and belief, in unlawfully competing with Plaintiff and soliciting Plaintiff's customers, Defendants have violated their Agreement by use of Plaintiff's confidential and proprietary information, including trade secrets.

27.     When Plaintiff learned that Defendants had gone to work with Globus Medical as sales representatives, BioMed then, on September 5, 2014, reminded each Defendant by letter, of the terms of the Agreement and recited to him the pertinent terms of the Agreement. A copy of each letter is attached hereto as collective Exhibit D.

28.     Defendants received the correspondence, but did not respond directly to BioMed.

29.     On September 7, 2014, BioMed CEO, Scott Barnhill and sales representative Kevin Boyle traveled to Jackson, Mississippi for the purpose of covering previously scheduled surgeries and meeting  with the customers to ensure all upcoming surgeries were covered and proper spinal instrumentation had been ordered. BioMed's largest customer indicated that all of

the scheduled surgeries had been moved to Globus Medical and the customer was already aware of the resignation of Defendants Allen and Murphy.

30.     To date, Defendants have not complied with BioMed's request or the terms of the aforementioned restrictive covenants, and, upon information and belief, continues to compete with BioMed and solicit business from its clients.

31.     Upon information and belief, Defendants continue to breach their Agreement, by working for Globus Medical, soliciting BioMed customers and divulging BioMed's confidential information.

**COUNT ONE**

**BREACH OF AGREEMENT**

**Confidentiality Non-Solicitation of Employees, Customers, and
Restriction on Competitive Employment**

32.     Plaintiff hereby incorporates, as if fully stated herein, Paragraphs 1 through 31 of the Complaint.

33.     Defendants entered into valid, binding contracts (*i.e.*, the Agreements) that include Confidentiality Non-Solicitation of Employees, Customers, and Restriction on Competitive Employment. The restrictions therein concern legitimate protectable interests of BioMed, and are reasonable in terms of geographic and temporal scope. Defendants agreed to the following language in the Agreement:

> In order to protect [BioMed's] Trade Secrets and Proprietary Information, during the Restricted Period, I will not (as principal, agent, employee, consultant, director or otherwise), anywhere within the geographic area more particularly described on Exhibit A attached hereto and incorporated by reference herein (the "Restricted Area"), directly or indirectly, without the prior written approval of Scott Barnhill, chief executive officer of the Company, engage in, or perform any services for, a Competitive Business. For purposes of this Agreement, "Competitive Business" shall mean any business that is similar to or that otherwise competes with the Company's Business. Notwithstanding the

7

foregoing, I understand that I may have an interest consisting of publicly traded securities constituting less than 1 percent of any class of publicly traded securites in any public company engaged in a Competitive Business so long as I am not employed by and do not consult with, or become a director of or otherwise engage in any activities for, such company. The Restricted Period shall be extended by the length of any period which I am in breach of the terms of this paragraph.

34.     Since the cessation of employment with BioMed, Defendants have accepted employment as Sales Representatives with Globus Medical, which is a direct competitive business of BioMed, which violates the Restriction on Competitive Employment provision of the Agreement. See Exhibit C.

35.     Since becoming employed by Globus Medical, Defendants have solicited BioMed customers, which violates the Non-Solicitation of Employees, Customers provision of their respective Agreements. See Exhibit C.

36.     Defendants will continue to compete directly with BioMed during their employment with Globus Medical, by providing the services substantially similar to services provided to BioMed's clients within the restricted geographic area, or by soliciting or accepting business from clients the Defendants served while employed with BioMed.

37.     Defendants have also violated the Confidentiality provision of their respective Agreements by improperly disclosing BioMed's confidential information.

38.     As a direct and proximate result of Defendants' breach of the above-described provisions of their Agreements, BioMed has sustained and is sustaining damages and irreparable injury and will, absent equitable relief, continue to suffer actual damages, including but not limited to lost sales revenue and profits in amounts presently incalculable.  BioMed will also suffer irreparable harm including, but not limited to loss of customers, prospective clients and customers, goodwill, sales, potential sales, and the permanent loss of its trade secrets, privileged

and confidential information, which BioMed developed through substantial investment and effort, for which BioMed has no adequate remedy at law. Plaintiff will continue to suffer such damages and irreparable injury in the event Defendants are permitted to continue to violate the terms of their Agreements.

39.    In addition to the equitable relief sought to prevent further breaches of their Agreements, BioMed seeks compensatory and punitive damages against Defendants for all items of damages allowed by law. BioMed is also entitled to recover such actual and consequential damages as may be provable upon the trial of this cause plus costs.

## COUNT TWO
## MISAPPROPRIATION AND/OR DISCLOSURE OF TRADE SECRETS

40.    Plaintiff hereby incorporates, as if fully stated herein, paragraphs 1 through 39 of the Complaint.

41.    The Tennessee Uniform Trade Secrets Act ("TUTSA"), codified at Tenn. Code Ann. § 47-25-1701 et seq., prohibits persons from misappropriating trade secrets. The TUTSA also prohibits persons from obtaining and using trade secrets when those person had reason to know that the trade secrets were acquired by improper means.

42.    The confidential and proprietary information, trade secrets, and the like acquired by Defendants during employment with Plaintiff, are trade secrets and confidential and proprietary information of Plaintiff's, which derives economic value from not being generally known and not being readily available by proper means to other persons who can obtain economic value from its disclosure or use. Such information is the subject of BioMed's reasonable efforts to maintain its secrecy under the circumstances. Such information, therefore, constitutes protectable trade secrets within the meaning of Tenn. Code Ann. § 47-25-1702.

43.     Upon information and belief, Defendants have misappropriated, misused and/or disclosed BioMed's confidential trade secrets including but not limited to, technical and non-technical or financial data, prices charged to clients, costs and pricing information, pricing and profit methods, sales and gross profit margins, client buying preferences, timing of services or other information established as part of the client's needs/desires, client lists and contact information, methods of operation, sales methods, and other items relating to BioMed's business operations and/or the business operations and preferences of BioMed's clients or potential business opportunities.

44.     Defendants' disclosure and/or use of any of Plaintiff's confidential and proprietary information, trade secrets, and the like, for their own personal gain or for the benefit of persons and entities other than Plaintiff were not authorized by Plaintiff and are in violation of T.C.A. § 47-25-1701 *et seq*.

45.     As a direct and proximate result of Defendants' misappropriation, misuse, and/or disclosure and use of Plaintiff's confidential and proprietary information, trade secrets, and the like, Plaintiff has  sustained and  will continue to sustain damages and irreparable injury through the permanent loss of its clients and customers, prospective clients and customers, goodwill, sales, and potential sales.  Plaintiff will continue to suffer such damages and irreparable injury unless Defendants are enjoined from continuing such disclosure and use.

46.     The trade secrets that have been willfully disclosed by Defendants derive their value from not being generally known to, nor readily ascertainable by proper means,  by other persons who can obtain economic value from their disclosure or use, and Plaintiff exercised reasonable efforts to maintain the secrecy and confidentiality of its trade secrets.

47.     In disclosing the above-referenced confidential and proprietary information, trade secrets, and the like, Defendants acted intentionally, willfully, and with a complete and knowing disregard for the rights of Plaintiff, such that an award of punitive damages is proper.

## COUNT THREE
## TORTIOUS INTERFERENCE WITH BUSINESS AND CONTRACTS

48.     Plaintiff hereby incorporates, as if fully stated herein, Paragraphs 1 through 47 of the Complaint.

49.     Defendants' activities, since their resignation, as described herein, have been engaged in by Defendants intentionally and maliciously and with the intent to harm Plaintiff's business and contracts.

50.     BioMed has existing business relationships with its clients. Defendants had integral knowledge of the relationship between BioMed and its clients.

51.     The actions and anticipated actions of Defendants entail direct unfair competition for the business of BioMed's clients and prospective clients.

52.     Defendants' actions are to convert clients and prospective clients from BioMed into clients of a competitor.  The Defendants intent is to breach or terminate BioMed's existing business relationships.

53.     By interfering with and disrupting BioMed's relationship with its customers, Defendants will act, and has acted, with an improper motive and intent to injure BioMed.

54.     As a direct and proximate result of Defendants' tortious interference with Plaintiff's business and existing contracts, Plaintiff has sustained and is sustaining damages and irreparable harm and injury through the permanent loss of its trade secrets, privileged and confidential information,  clients and customers, prospective clients and customers, goodwill,

sales, and potential sales.  Plaintiff will continue to suffer such damages and irreparable injury unless Defendants are enjoined from continuing their above-mentioned activities as well as actual compensable damages.

55.     In tortiously interfering with Plaintiff's business and existing contracts, Defendants acted intentionally, willfully, and with a complete disregard for the rights of Plaintiff, such that an award of punitive damages is proper.

## COUNT FOUR
## BREACH OF DUTY OF LOYALTY

56.     Plaintiffs hereby restate and incorporate by reference the allegations set forth in Paragraphs 55 as if fully and completely restated herein.

57.     Defendants owed a duty of loyalty to BioMed. This duty obligated Defendants Allen and Murphy to perform reasonably to advance the interest of BioMed and to refrain from engaging in conduct adverse to the interest of BioMed.

58.     Defendants violated their duty of loyalty by acting adverse to BioMed by preparing to compete with BioMed while still employed by BioMed.  Defendants actively engaged one of BioMed's largest customers to discontinue use of BioMed's products and use the products of Globus Medical. These actions by Defendants while still employed by BioMed still violates the common law duty of loyalty arising under the employment agreements and Defendants' relationship with BioMed.

59.     As a direct and proximate result of Defendants' breaches, BioMed has suffered and continues to suffer damages and irreparable harm, including loss of goodwill, and BioMed is entitled to damages to be proven at trial and injunctive relief.

## INJUNCTIVE RELIEF

60.     Plaintiff hereby incorporates, as if fully stated herein, paragraphs 1 through 59 of the Complaint.

61.     Plaintiff BioMed's rights are being and/or will continue to be violated as a direct and proximate result of Defendants' actions, as described in Counts One through Four of this Complaint.

62.     As a result of the actual and/or threatened violation of its rights as described above, Plaintiff has suffered and/or will suffer immediate and irreparable injury, losses, and damages pending a final judgment in this action, specifically, but not limited to, the loss of customers and business, the loss of its trade secrets, the loss of privileged and confidential information, the loss of current and prospective customers, and the loss of its current market advantage.

63.     BioMed has no adequate remedy at law.  The threatened injury to BioMed substantially outweighs the threatened harm to Defendants that would result from the granting of Plaintiff's requested injunctive relief, and the granting of an injunction will not disserve the public interest.

64.     BioMed has a substantial likelihood of success on the merits of this cause, and the entry of a preliminary injunction will not conflict with the public interests.

65.     Any available remedy at law would be inadequate to compensate Plaintiff for the injury it would sustain if no injunction were to issue, and, further, Tennessee law provides for such injunctive relief.

WHEREFORE, Plaintiff BioMed prays:

1.     That proper process issue and be served upon Defendants, requiring each to appear and answer within the time provided by law;

2.     This Court will order Defendants to immediately take steps to preserve evidence relevant to this dispute;

3.     That this Court will order expedited discovery in this matter;

4.     That, upon a preliminary injunction hearing of this cause, this Court enter a permanent injunction for the following:

   (a)   estraining and enjoining Defendants from competing with Plaintiff;

   (b)   from working for or contracting with a competitor, including without limitation Globus Medical and from receiving compensation from a competitor, including without limitation Globus Medical;

   (c)   from soliciting or serving Plaintiff's customers and potential customers;

   (d)   from disclosing or making use of Plaintiff's confidential and proprietary information, materials, trade secrets, and the like, and from violating any other provisions of the Agreement;

5.     That this Court require an accounting and enter judgment against Defendants in favor of Plaintiff for all damages proven as a result of Defendants' breach of the Agreement, for Defendants' tortious interference with the business and contracts of Plaintiff, and for Defendants' violation of the Tennessee Trade Secrets Act by disclosing and misappropriating Plaintiff's confidential and/or proprietary information, trade secrets, and the like;

6.      That this Court enter judgment against Defendants for punitive damages for the tortious interference with the business and contracts of Plaintiff, for Defendants' disclosure and making use of Plaintiff's confidential and proprietary information, trade secrets, and the like, for Defendants' interference and threatened interference with Plaintiff's business and prospective business and the like, in the amount to be determined by the Court;

7.      That this Court Enter Judgment in favor of BioMed for compensatory and treble damages for Defendants' knowing and willful conduct in violation of Tenn. Code. Ann. § 47-50-109.

8.      That this Court extend the time period that Defendants are prohibited from competing and soliciting due to their breach;

9.      That this Court award Plaintiff its compensatory damages, as well as Plaintiff's reasonable attorneys fees, costs, and expenses incurred herein,  as statutorily and otherwise permitted; and

10.     That this Court order any and all other and further general and equitable relief to which Plaintiff may be entitled in this cause.

**THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF IN THIS**

**MATTER.  NO OTHER JUDGE HAS DENIED THE RELIEF SOUGHT HEREIN.**

Respectfully submitted,

Louis Britt, (TN Bar No. 5613)*
Robbin Hutton (MS Bar 6482)
J. Dylan King (TN Bar No. 28179)*

FORD & HARRISON LLP
795 Ridge Lake Blvd., Suite 300
Memphis, TN  38120
Telephone: 901-291-1500
Facsmile:   901-291-1501

*_Pro Hac Vice_ admission pending

**VERIFICATION**

STATE OF TENNESSEE
COUNTY OF SHELBY

I, Scott Barnhill, being first duly sworn, states that I am the CEO and Principle for

BioMed, LLC, whose corporate headquarters is located at 7751 Wolf River Blvd., Germantown,

Tennessee 38138, and the facts contained in the attached Complaint are true and correct to the

best of my knowledge, and that I am authorized to execute the above foregoing Complaint on

behalf of BioMed, LLC.

FURHTER DECLARANT SAITH NOT.

Pursuant to 28 U.S.C. §1746,  I declare under penalty of perjury that the foregoing

declaration is true and correct.

Executed this the ___6___ day of October, 2014.


_____
Scott Barnhill